UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
GABRIEL D'JAMOOS,

                        Plaintiff,

          v.

MICHAEL GRIFFITH,

                       Defendant.
-------------------------------------------------------x

<u>MEMORANDUM
AND ORDER</u>

00-CV-1361 (ILG)

GLASSER, United States District Judge:

This action concerns legal services provided by defendant attorney Michael Griffith ("defendant" or "Griffith") to plaintiff Gabriel D'Jamoos ("plaintiff") in connection with a commercial dispute.  Plaintiff commenced a legal malpractice action against defendant and this Court granted summary judgment in favor of defendant dismissing the complaint in its entirety.  Pending before the Court are various motions relating to defendant's counterclaims for attorney's fees.

## **FACTS**

In an order dated August 31, 2004, familiarity with which is assumed, this Court granted summary judgment in favor of defendant and dismissed plaintiff's complaint in its entirety.  <u>See</u> Affidavit of Ann Marie Forte ("Forte Aff.") Ex. A (attaching <u>D'Jamoos v. Griffith</u>, No. 00-1361 (E.D.N.Y. 2004) ("<u>D'Jamoos I</u>")).  The factual background of this dispute is set forth in detail in that Memorandum and Order.  Briefly, for purposes of this motion, the Court details the following facts.  Plaintiff retained defendant for legal representation in 1986.  The parties had a retainer agreement that provided for a 20% contingency fee based on "settlement, trial or otherwise," in addition to an initial

1

retainer and per diem fee in the event of trial.  Id. at 7.  Defendant represented plaintiff

in a dispute between plaintiff and his brother-in-law, John Lucchese ("Lucchese"),

concerning plaintiff's investment in Belmont Realty Corporation ("Belmont").

Defendant commenced an action on behalf of plaintiff against Lucchese and his wife,

plaintiff's sister, which went to trial in February 1997.  At the close of all the evidence,

the parties placed an oral settlement on the record, which was never consummated.

Plaintiff and Lucchese reached a second settlement agreement in March 1998 (the "1998

Settlement"), pursuant to which plaintiff was to receive 49% of the issued and

outstanding shares of Belmont without regard to the amount of his investment.  Second

Amended Complaint ("Compl.") ¶ 7; Forte Aff. Ex. A., D'Jamoos I at 5.  That settlement

was memorialized in a written stipulation of settlement on September 27, 1998 (the

"Restated Shareholders' Agreement" or "RSA").[1]  See id. at 6.   By 1999, plaintiff had not

received the shares from the 1998 Settlement.[2]  Plaintiff terminated defendant's legal

services in December 1999.  Id.

On July 19, 2000, plaintiff commenced this action, in which he asserted various

claims including:  (1) legal malpractice; (2) that defendant represented plaintiff despite

a conflict of interest in violation of N.Y. Judiciary Law § 487; (3) breach of fiduciary duty

based on defendant's failure to disclose a conflict of interest created by counsel Griffith

hired to represent him when he was sued in an unrelated action; and (4) common law

---

[1] The date of this document is reported in different submissions by the parties as September 22 or September 27.  The Court will assume the RSA is dated September 27 and notes that the date does not affect the determination of the pending motions.

[2] Lucchese attempted to transfer the shares of Belmont to plaintiff, but plaintiff refused because he believed that receiving the shares would create increased tax liability for him.  See D'Jamoos I at 7.

fraud based on defendant's failure to disclose the conflict of interest. Plaintiff premised

subject matter jurisdiction on diversity of citizenship pursuant to 28 U.S.C. § 1332.[3]

Defendant answered the complaint[4] and asserted, <u>inter alia</u>, two counterclaims for (1)

plaintiff's breach of his agreement to compensate defendant for legal services rendered

and (2) a judgment in quantum meruit for the reasonable value of those services.

After granting summary judgment in favor of defendant in <u>D'Jamoos I</u>, the Court

administratively closed the case. Plaintiff thereafter filed a notice of appeal, which he

withdrew by stipulation after the Court reopened the case in light of the defendant's

pending counterclaims. <u>See</u> Affidavit of Todd J. Krouner ("Krouner Aff.") Ex. D.

Pending before the Court are the following motions: (1) plaintiff's motion to

dismiss the counterclaims for lack of subject matter jurisdiction pursuant to Fed. R. Civ.

P. 12(b)(1); (2) plaintiff's motion, in the alternative, for an order entering final judgment

on the Court's order of summary judgment pursuant to Fed. R. Civ. P. 54(b); (3) an

order setting a trial date for resolution of defendant's counterclaims; (4) defendant's

cross-motion for permission to amend his counterclaims to assert the requisite amount

in controversy under 28 U.S.C. § 1332; and (5) defendant's request that this action be

referred to the assigned Magistrate Judge for establishment of a discovery schedule

regarding damages. The Court will consider each motion in turn.

---

[3] Plaintiff is a citizen of New Jersey and defendant is a citizen of New York. Compl. ¶¶ 1, 2.

[4] Defendant asserted the counterclaims at issue here in his answer to the Amended Complaint, which was filed on August 14, 2001. Plaintiff then filed a Second Amended Complaint on November 27, 2002.

**DISCUSSION**

When deciding a motion to dismiss for failure to state a claim for relief under

Fed. R. Civ. P. 12(b)(6), a court takes the facts as alleged in the counterclaims to be true,

and must draw all reasonable inferences from those facts in favor of the defendant.  See

Ortiz v. Cornetta, 867 F.2d 146, 149 (2d Cir. 1989) (stating principles with respect to

facts alleged in a complaint).  "[M]otions to dismiss for [lack of] subject matter

jurisdiction under Rule 12(b)(1) are reviewed under the same standards as motions to

dismiss for failure to state a claim under Rule 12(b)(6)."  Walker v. New York, 345 F.

Supp. 2d 283, 286 (E.D.N.Y. 2004) (Hurley, J.) (citations omitted).  A court must not

dismiss the counterclaims "unless it appears beyond doubt that the [defendant] can

prove no set of facts in support of his claim which would entitle him to relief."  Conley v.

Gibson, 355 U.S. 41, 45-46 (1957).

I.      **Plaintiff's Motion to Dismiss the Counterclaims**

        A.      **Subject Matter Jurisdiction**

        Plaintiff argues that defendant's counterclaims fail to satisfy the requisite amount

in controversy for diversity jurisdiction under 28 U.S.C. § 1332.  See Pl. Mem. at 2.

Defendant in turn requests leave to amend his counterclaims to allege the amount in

controversy under § 1332(a) and an order from the Court directing that expert discovery

on damages commence.

        Courts have supplemental jurisdiction over compulsory counterclaims regardless

of whether there is an independent basis for jurisdiction over those claims, i.e., diversity

jurisdiction or federal question jurisdiction.  Baker v. Gold Seal Liquors, Inc., 417 U.S.

467, 469 n.1 (1974) ("If a counterclaim is compulsory, the federal court will have

4

ancillary jurisdiction over it even though ordinarily it would be a matter for a state court); Moore v. New York Cotton Exchange, 270 U.S. 593, 608-10 (1926) (court had jurisdiction over compulsory counterclaim, notwithstanding that claim creating federal question jurisdiction over complaint was dismissed); Harris v. Steinem, 571 F.2d 119, 121-22 (2d Cir. 1978) (citing rule regarding supplemental jurisdiction over compulsory counterclaims); Corsearch, Inc. v. Thomson & Thomson, 792 F. Supp. 305, 333 (S.D.N.Y. 1992) (holding court had supplemental jurisdiction over compulsory state law counterclaims and that jurisdiction remained despite the fact that plaintiff's claims containing allegations which formed part of the same factual context as defendant's counterclaims were dismissed before trial). See also 10 James Wm. Moore, et al., Moore's Federal Practice § 13.110[3], 13-102 (3d ed. 2004) (hereinafter "Moore's Federal Practice") ("unless it falls within the supplemental jurisdiction of the court, a counterclaim ... in an action based on diversity must satisfy the jurisdictional amount").

Thus, whether an independent jurisdictional basis must exist in order for the Court to adjudicate defendant's counterclaims turns on the nature – compulsory or permissive – of those claims. According to Federal Rule of Civil Procedure 13(a), a compulsory counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim...." Courts interpret this standard broadly. See Moore, 270 U.S. at 610 ("'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship."). Courts consider the following factors when deciding whether a counterclaim is compulsory or permissive: "(1) identity of facts between the original claim and counterclaim; (2)

mutuality of proof; (3) logical relationship between original claim and counterclaim."

Mirkin, Barre, Saltzstein, Gordon, Hermann & Kreisberg v. Noto, 94 F.R.D. 184, 187

(E.D.N.Y. 1982) (Glasser, J.) (quoting Federman v. Empire Fire & Marine Ins. Co., 597

F.2d 798, 811-12 (2d Cir. 1979)). "Although these factors or tests may be indicative in

one sense or another of the compulsory character of a counterclaim, no one of them is

conclusive, and should not be relied upon exclusively." Id. The crucial inquiry with

respect to pleadings is "whether the essential facts of the various claims are so logically

connected that considerations of judicial economy and fairness dictate that all the issues

be resolved in one lawsuit." Harris, 571 F.2d at 123; see also Koufakis v. Carvel, 425

F.2d 892, 898-99 (2d Cir. 1970) (counterclaim found to be compulsory because

allegations of wrongful termination of franchise in violation of franchise agreement

arose out of the same facts as plaintiff's claim for breach of contract).

In his first counterclaim, defendant alleges that he agreed to represent plaintiff in

a commercial dispute and that plaintiff paid defendant an initial retainer fee of $10,000

and agreed to pay defendant the remainder on a contingency fee basis of 20% of any

award after trial or settlement. Def. Answer ¶ 15. Additionally, plaintiff agreed to pay

for all out-of-pocket expenses incurred by defendant on behalf of plaintiff. Id.

Defendant alleges that plaintiff reimbursed him for the out-of-pocket expenses he

incurred. By contrast, because plaintiff refused to execute and conclude the Restated

Shareholders' Agreement and never recovered any amount in the litigation, defendant

has not been compensated for the legal services he rendered and has suffered damages

in an amount to be determined at trial. Id. ¶ 16-17. In his second counterclaim,

defendant alleges that plaintiff is liable for the fair and reasonable value of the

defendant's legal services.  Defendant seeks a judgment against plaintiff in quantum

meruit in an amount to be determined by the Court.  Id. ¶¶ 20-21.

The Court finds that these counterclaims are compulsory in nature.  They are

based on the same transaction as the subject matter of plaintiff's complaint, namely, the

legal services defendant provided to plaintiff.  There is an identity of facts underlying the

claims and counterclaims, in particular, with regard to the parties' agreement as to

defendant's fees and the Restated Shareholders' Agreement.  Moreover, courts hold that

legal malpractice claims and counterclaims for legal fees arising from that litigation are

"logically related."  See Mirkin, Barre, 94 F.R.D. at 187 (finding that counterclaims

involving retainer agreements between plaintiff law firm and client were logically

related to original complaint which alleged that defendants, individuals involved in a

legal services fund, conspired to damage the reputation of plaintiff and to induce the

fund to breach its retainer agreement with plaintiff).  See also Schonberger v. Serchuk,

1991 WL 167259, at *2 (S.D.N.Y. Aug. 22, 1991) (counterclaim for conspiracy to deprive

a law firm of legal fees was compulsory given logical relationship with original claim for

legal malpractice); Law Offices of Jerris Leonard v. Mideast Sys., Ltd., 111 F.R.D. 359,

361 (D.D.C. 1986) (holding that under standard analyzing similarity of facts and

evidence underlying claims "it is hard to imagine a clearer compulsory counterclaim to a

complaint for failure to pay legal fees than a legal malpractice claim stemming from the

handling of the litigation for which fees are sought").

Because defendant's counterclaims are compulsory, jurisdiction over them is

ancillary to this Court's original jurisdiction over the underlying action and the Court

need not find an independent basis for jurisdiction.  See United Artists Corp. v.

Masterpiece Prods., Inc., 221 F.2d 213, 216 (2d Cir. 1955) (in copyright infringement and unfair trade practices action, counterclaim alleging unfair trade practices by plaintiffs was compulsory and therefore the court had ancillary jurisdiction over the counterclaim); Holsten Import Corp. v. Rheingold Corp., 285 F. Supp. 607, 607-8 (S.D.N.Y. 1968) (holding that jurisdiction existed over compulsory counterclaim irrespective of independent basis for jurisdiction and declining to reach defendant's argument that diversity jurisdiction exists).[5] Accordingly, the Court denies plaintiff's motion to dismiss defendant's counterclaims for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and denies defendant's motion to amend his counterclaims as superfluous.[6]

---

[5] Plaintiff's citation to McAllister Towing & Transport. Co., Inc. v. Offshore Express, Inc., 2004 WL 1488192, at **1, 2 (S.D.N.Y. July 1, 2004), does not persuade the Court to reach a different conclusion. In that case, plaintiff moved to dismiss defendant's counterclaim for, among other reasons, lack of subject matter jurisdiction. The Court dismissed the counterclaim for defendant's failure to adequately allege the amount-in-controversy requirement for diversity jurisdiction pursuant to § 1332(a). Additionally, the court declined to exercise supplemental jurisdiction over the counterclaim, citing § 1367(c)(3), which permits the district court to exercise discretion to decline jurisdiction over a claim where all other claims providing original jurisdiction have been dismissed. Since the court did not discuss the issue of ancillary jurisdiction over compulsory counterclaims, McAllister does not compel the Court to reach a different result in this case.

[6] In Mirkin, Barre, 94 F.R.D. at 186, this Court held that defendant's counterclaims against plaintiff and three individual fund members joined as counterclaim defendants were compulsory, but held that the counterclaims of those three individuals against defendants were merely permissive. The Court dismissed the permissive counterclaims given that there was no independent basis for jurisdiction over them because they failed to properly raise a federal question. Id. at 188. Notwithstanding its acknowledgment that courts have ancillary jurisdiction over compulsory counterclaims and that a federal court may properly adjudicate a counterclaim even if the underlying complaint has been dismissed on nonjurisdictional grounds, the Court exercised its discretion to dismiss those compulsory counterclaims. In so holding, the Court noted that discovery had not significantly progressed so as to create any unfairness to defendants should they later bring the action in state court. Id. at 189-90. By contrast, in this case fact discovery has concluded and only discovery regarding damages remains to be conducted. See Forte Aff. Ex. B (order by Magistrate Pollack dated October 21, 2003 noting that damages expert disclosures are reserved until after summary judgment motion is decided). Moreover, the Court's familiarity with the litigation counsels retaining jurisdiction over the counterclaims.

**B.	Failure to State a Claim for Quantum Meruit**

Though not styled as such, plaintiff moves to dismiss defendant's counterclaims

pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

To state a claim for quantum meruit under New York law, a plaintiff must allege:  "(1)

the performance of the services in good faith, (2) the acceptance of the services by the

person to whom they are rendered, (3) an expectation of compensation therefor, and (4)

the reasonable value of the services."  U.S. v. Raymond & Whitcomb Co., 53 F. Supp. 2d

436, 444 (S.D.N.Y. 1999) (citations omitted).  See also Fieger v. Pitney Bowes Credit

Corp., 251 F.3d 386, 403 (2d Cir. 2001) (stating elements and requirement "that

circumstances were such that equity and good conscience require that the defendant

should compensate the plaintiff").  Plaintiff does not dispute that defendant has

adequately alleged the first three elements of the cause of action.  Instead, plaintiff

argues that, with respect to the value of defendant's services, "in the absence of any

quantifiable damages, defendant's counterclaims should be dismissed with prejudice."

Pl. Mem. at 4.

In Dweck Law Firm v. Mann, 2004 WL 1794486, at *1 (S.D.N.Y. Aug. 11, 2004),

the parties – a law firm and its client – agreed that plaintiff would be compensated

pursuant to a contingency fee arrangement.  Id.  During the time she was represented by

plaintiff, defendant declined a settlement offer and therefore did not recover in the

action.  Id.  Plaintiff sought and the court granted an award of fees in quantum meruit

for services rendered to defendant.  Id. at *4.  Defendant then moved for

reconsideration of the court's ruling.  See Dweck Law Firm v. Mann, 2004 WL 2202587,

at *3 (S.D.N.Y. Sept. 30, 2004).  In reviewing its calculation of the reasonable value of

the attorney's services based on evidence submitted by the parties, the court noted that a contingency arrangement was one factor to be considered in determining the value of the services, "even where the discharged attorney obtained a settlement offer for the client that was not consummated." Id. at *2. The court refused to reconsider its ruling and held that plaintiff could either seek a quantum meruit judgment for the fair and reasonable value of the services rendered or a charging lien against the underlying lawsuit. Id. at *3.

In this case, plaintiff discharged defendant on December 1, 1999, see Compl. ¶ 8, and defendant has yet to be compensated for the legal services he provided to plaintiff. Defendant alleges that pursuant to his fee arrangement with plaintiff, he is entitled to "20% of any award after trial or settlement." Def. Answer ¶ 15. The Court finds that defendant adequately alleges entitlement to fees in quantum meruit for an amount to be determined. As in Dweck, defendant is entitled to submit evidence regarding the reasonable value of his legal services, including the contingency fee arrangement with plaintiff and the value of the property that was the subject of the Restated Shareholders' Agreement. This matter is referred to the assigned Magistrate Judge to establish a discovery schedule regarding damages.[7]

## II.     Motion for Certification Pursuant to Rule 54(b)

In the alternative, plaintiff moves this Court to certify the decision in D'Jamoos I, which granted summary judgment in favor of defendant, as a final, appealable order and direct the entry of judgment for certification under Rule 54(b). That Rule provides: "When more than one claim for relief is presented in an action, whether as a claim,

---

[7] Following discovery, the Court will contact the parties to set a trial date.

counterclaim, cross-claim, or third-party claim, ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."[8]  The decision to enter judgment pursuant to Rule 54(b) is left to the discretion of the district court.  See Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 16 (2d Cir. 1997).  Nevertheless, the Second Circuit has "emphasized that, in light of the historic federal policy against piecemeal appeals, the court's power under Rule 54(b) to enter a final judgment should be exercised sparingly."  Id. (citations omitted).  In deciding a motion for Rule 54(b) certification, courts must be mindful of "the purposes and policies behind the distinct and separate claims requirement of Rule 54(b), namely the desire to avoid redundant review of multiple appeals based on the same underlying facts and similar issues of law."  Hudson River Sloop Clearwater v. Dept. of Navy, 891 F.2d 414, 418 (2d Cir. 1989).

As an initial matter, this Court's order granting summary judgment in favor of defendant is a final order for purposes of Rule 54(b).  See Dean Constr. Co., Inc. v. Simonetta Concrete Constr. Corp., 37 F.R.D. 242, 248 (S.D.N.Y. 1965).  The Court must then determine whether there is any "just reason for delay" in entering judgment on that order.  See Fed. R. Civ. P. 54(b).  It must analyze whether plaintiff's main claims and defendant's counterclaims are "multiple claims" under the Rule, that is, whether the "certified claims are based upon factual and legal questions that are distinct from those questions remaining before the trial court...."  Hudson River Sloop Clearwater, 891 F.2d

---

[8]  "The combination of the direction and determination is often referred to as certification of the order under Rule 54(b)."  Moore's Federal Practice § 54.24[1] (emphasis in original).

at 418.  Earlier in this opinion, the Court held that defendant's counterclaims are

compulsory in nature.  See discussion supra.  "Because entry of judgment is permissible

even if the multiple claims arise from the same transaction or occurrence ..., a claim and

a compulsory counterclaim are 'multiple claims' for purposes of Rule 54(b).  A district

court may therefore enter final judgment on a claim even though a compulsory

counterclaim remains pending...."  Moore's Federal Practice § 54.29[1].  See also

Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 9 (1980) ("counterclaims, whether

compulsory or permissive, present no special problems for Rule 54(b) determinations;

counterclaims are not to be evaluated differently from other claims").[9]

The "significance [of counterclaims] for Rule 54(b) purposes turns on their

interrelationship with the claims on which certification is sought."  Curtiss-Wright, 446

U.S. at 8.  "Because claims arising from the same transaction or occurrence are factually

related as a matter of definition, the court's discretion under Rule 54(b) is more likely to

have been abused when judgment is entered on either a claim or compulsory

counterclaim while the other remains pending."  Moore's Federal Practice § 54.29[2].

Plaintiff's claims against defendant concern whether he was negligent in rendering legal

services in connection with the Lucchese action.  As discussed above, defendant's

counterclaims seek fees for those services he provided to plaintiff.  Plaintiff asserts that

he has "legal defenses" to defendant's counterclaims, namely, that he terminated

---

[9]  In Curtiss-Wright, plaintiff sued defendant in the context of a commercial transaction for breach
of contract, fraud and misrepresentation.  Defendant asserted counterclaims for costs and damages based
on a theory of unjust enrichment.  446 U.S. at 3-4.  The district court granted summary judgment in favor
of plaintiff and held that it was entitled to the balance of the contracts due plus interest.  Id. at 4.  Plaintiff
then moved for and was granted Rule 54(b) certification as to the summary judgment ruling.  Id.  The
Third Circuit reversed and the Supreme Court vacated and remanded.

defendant for cause and therefore that defendant is not entitled to recover under a quantum meruit theory. See Pl. Mem. at 5 (citing Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C., 370 F.3d 259 (2d Cir. 2004)). Plaintiff contends that the availability of such a defense demonstrates a lack of interdependence between the claims and counterclaims. The Court finds that precisely the opposite is true. To the extent that plaintiff, in defending against the counterclaims, disputes whether defendant acted with reasonable care in providing legal services to him, see Garcia v. Teitler, 2004 WL 1636982, at *6 (E.D.N.Y. July 22, 2004) (defining "cause" in quantum meruit context as attorney misconduct including failure to exercise ordinary skill or care in representing client), resolution of defendant's counterclaims involves the same facts and legal issues as to which this Court made determinations in ruling on defendant's motion for summary judgment. In view of the finding that the claims and counterclaims are not severable here, the judicial interest in avoiding piecemeal appeals weighs against certifying the order granting summary judgment in favor of defendant for appeal under Rule 54(b). With respect to equitable considerations, the Court finds that plaintiff will not suffer any hardship if certification is denied. Accordingly, the Court denies plaintiff's motion for certification under Rule 54(b).

## CONCLUSION

For the reasons stated above, the Court (1) denies plaintiff's motion to dismiss defendant's counterclaims for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1); (2) denies defendant's motion to amend his counterclaims; and (3) denies plaintiff's motion for Rule 54(b) certification. This matter is referred to the assigned

13

Magistrate Judge to establish a discovery schedule regarding damages.

SO ORDERED.

Dated:  May 9, 2005
        Brooklyn, New York

s/_____
I. Leo Glasser
United States District Judge

Copies of the foregoing were sent on this day to:


Todd J. Krouner
Law Offices of Todd J. Krouner
93 N. Greeley Avenue, Suite 100
Chappaqua, NY 10514


Ann Marie Forte
McManus, Collura & Richter, P.C.
48 Wall Street
New York, NY 10005